UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x
                                                      :

HARPERCOLLINS PUBLISHERS L.L.C.,      :

                                   :

                        Plaintiff,      :      10 Civ. 8782 (TPG)

                                   :

           – against –             :      **OPINION**

                                   :

GAWKER MEDIA LLC,                     :

                                   :

                      Defendant.     :

                                   :
-----------------------------------------------x

        Plaintiff, HarperCollins Publishers L.L.C., is a publishing company holding exclusive rights to publish, reproduce, and distribute *America By Heart*, a book authored by former vice-presidential candidate Sarah Palin.  Defendant, Gawker Media LLC, is an online media company that publishes many blogs, including the blog at the heart of this dispute, Gawker.com ("Gawker").

        In this action, plaintiff claims that defendant has violated its copyright rights by copying and publishing material from the Book on the Gawker blog.  Following the commencement of the action, plaintiff presented the court with an order to show cause to set a hearing for a motion for preliminary injunction.  Most importantly for present purposes, the order to show cause contained a proposed temporary restraining order.

The court, through its Part I, held a hearing Saturday afternoon, November 20, 2010, attended by attorneys for plaintiff, and joined in by telephone by a representative of defendant.  The attorneys for plaintiff were Slade R. Metcalf and Rachel F. Strom of the firm of Hogan Lovells US LLP.  The representative of defendant was an officer of defendant, Gabrielle Darbyshire.

At the conclusion of the hearing Saturday afternoon, the court signed the temporary restraining order and set November 30, 2010 as the date for the hearing on the motion for preliminary injunction.

## FACTS

The Book will be available for sale Tuesday, November 23, 2010. In the run up to this release date, plaintiff, as publisher, has been coordinating a detailed publicity plan to promote the Book.  A major component of this plan, according to plaintiff, is maintaining strict control over the release of excerpts or other material from the Book.  For example, releases of advance copies to the media for review have been allowed only on the condition that no material from, or review of, the Book be published until the Book's release and all recipients of such copies have been required to sign nondisclosure agreements.  During this promotion, the only authorized release of excerpts from the Book, as far as the court is aware, has occurred on the author's Facebook page.  See Sarah Palin, *An Exclusive Sneak Peek at "America By Heart"*, FACEBOOK (Nov. 20, 2010, 1:12 PM), http://www.facebook.com/sarahpalin.

Defendant is not part of this promotional plan.  Nonetheless, during this distribution and promotion a copy of the Book, or a portion thereof, fell into defendant's hands.  Defendant then, without authorization from plaintiff, published images of 21 full pages from the Book on Gawker on November 17, 2010.  The posting was entitled "Sarah Palin's New Book: Leaked Excerpts."  When plaintiff made a complaint, an employee for defendant responded in a post on Gawker that the author should seek the advice of a lawyer on "fair use" in copyright law. Maureen O'Connor, *Sarah Palin Is Mad at Us for Leaking Pages From Her Book*, Gawker (Nov. 18, 2010 7:49 PM), http://gawker.com/5693797/ sarah-palin-is-mad-at-us-for-leaking-pages-from-her-book.

On the same day that defendant posted the images from the Book, plaintiff sent a letter to defendant demanding that the copyrighted material be taken down.  Plaintiff received no response and the material remained on Gawker.  On November 19, 2010, plaintiff filed suit against defendant for copyright infringement.

Plaintiff notified defendant that it would seek a temporary restraining order as early as possible, which was the next day, Saturday, November 20.  An appointment was made with the court for 3:00 o'clock that day.

Sometime that day the post on Gawker was altered.  Counsel for plaintiff states that this occurred at 1:30 Saturday afternoon, shortly

before the hearing.  Rather than images of 21 entire pages, the post now contained images of portions of 12 pages from the Book.

The hearing was held at the appointed time.  The major concern Saturday afternoon was whether a temporary restraining order should be issued pending the preliminary injunction hearing.  Plaintiff contended that there was a sufficient showing of violation of copyright and injury to justify the restraining order.  Defendant argued that what defendant had done, and particularly what was posted after the amendation, was fair use, and that, in any event, there was an insufficient showing of injury to justify a restraining order.

At the hearing, the court viewed on the computer the amended posting on Gawker.

## DISCUSSION

A temporary restraining order is a short-term protective device authorized under Rule 65 of the Federal Rules of Civil Procedure.  Its purpose is to protect a party from irreparable harm until more lasting relief, such as a preliminary injunction, can be sought.  See, e.g., American Broadcasting Companies, Inc. v. Cuomo, 570 F.2d 1080 (2d. Cir. 1978).

Standard for Granting a Temporary Restraining Order

Courts in this circuit have required plaintiffs seeking a temporary restraining order to show (1) either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair

ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor;" and (2) the likelihood of irreparable harm in the absence of such an order.  <u>In re Feit & Drexler, Inc. v. Drexler</u>, 760 F.2d 406, 415 (2d Cir. 1985).

<u>Likelihood of Success on the Merits</u>

The Supreme Court has described fair use as "a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent."  <u>Harper & Row Publishers, Inc. v. Nation Enterprises</u>, 471 U.S. 539, 549 (1985).  Section 107 of the Copyright Act codifies the defense of fair use.  It states:

> [T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

As an initial matter, defendant's use of the copyrighted material was not for "purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research."  The posts on Gawker consisted

of very brief introductions followed by the copied material.  This was far less than the reporting and commentary the Supreme Court found inadequate to establish fair use in Harper & Row.  All four factors in § 107 similarly weigh against defendant's claim of fair use.

As to the first factor, defendant had not used the copyrighted material to help create something new but has merely copied the material in order to attract viewers to Gawker.  See Campbell v. Acuff-Rose Music, 510 U.S. 569, 578-79 (1994).  As noted above, defendant essentially engaged in no commentary or discussion.  Its use of the copyrighted material was commercial in nature in two ways.  First, the copyrighted material was placed alongside links to advertisements.  The more clicks those links receive, the more compensation defendant can ask of advertisers.  Second, the more visitors Gawker receives because of the posting of the copyrighted material, the more attractive it becomes to potential advertisers on the site and, again, the more compensation defendant can ask of those advertisers.  See U.S. v. Am. Soc'y of Composers, Authors, and Publishers, 599 F. Supp. 2d 415, 428-29 (S.D.N.Y. 2009).

As to the second factor, the excerpts used by defendant come from an unpublished work, substantially weakening defendant's fair use claim.  See Harper & Row, 471 at 564.  The third factor also weighs against fair use in this case, as defendant published what amounts to a substantial portion of the Book regardless of whether the one considers

defendant's initial posting of 21 full pages or the subsequent posting of excerpts from 12 pages.  See id. at 565.

The fourth factor, the effect of the use upon the potential market for the Book, is a matter of speculation.  However, as discussed below, it is the difficulty in determining such effect that makes a legal remedy inadequate in this case.  Thus, this factor neither helps nor harms either side on the fair use issue.

The court concludes that plaintiff has, to say the least, a likelihood of success on the merits in connection with its claim of copyright infringement, as against the defense of fair use.

Irreparable Harm

On the issue of irreparable harm, the Second Circuit has directed courts to "actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury."  Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (internal quotations omitted).

It must be remembered that plaintiff is in the home stretch of a carefully orchestrated promotional campaign for a book that, at the time of the application, was to be released in only a few days.  The entire purpose of a pre-release promotional campaign is to increase sales of a book upon its release.  Plaintiff is, of course, exercising its rights under

the copyright law in thus controlling the release of the Book.  If this exercise of rights cannot be enforced with the aid of the court, a commercial advantage is lost, for which plaintiff cannot realistically be compensated in some later attempt to recover damages.

On a broader front, the purpose of the copyright law is to <u>prevent</u> the kind of copying that has taken place here.  In the present case, the only realistic remedy that would fulfill the statute's purpose is for the court in fact to <u>prevent</u>.  Sarah Palin, as the copyright owner, and plaintiff, as the exclusive licensee, possess rights to have their copyrighted work presented to the public in the form in which it was written by the author and published by the publisher.  It surely inflicts harm to have "abridged" versions circulated by way of illegal copying. Again, the only realistic way for a court to remedy this harm is through a prohibition against the copying.  A later claim for damages would probably be unavailing because of problems of measurement.

The court concludes that there has been a sufficient showing of irreparable harm to justify a temporary restraining order.

## CONCLUSION

The court affirms its decision of November 20, 2010, to grant a temporary restraining order.

SO ORDERED.

Dated:  New York, New York
        November 22, 2010

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11 / 22 / 10

- 9 -