UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HARPERCOLLINS PUBLISHERS L.L.C.,          :
                                          :
                       Plaintiffs,        : Case No.10 CIV 8782
                                          :
    – against –                           :
                                          :
GAWKER MEDIA LLC,                         :
                                          :
                       Defendant.         :
------------------------------------------------------------------X


**MEMORANDUM OF LAW OF PLAINTIFF HARPERCOLLINS PUBLISHERS L.L.C.
IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER
<u>AND MOTION FOR A PRELIMINARY INJUNCTION</u>**

Slade R. Metcalf
Katherine M. Bolger
Rachel F. Strom
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Tel.  (212) 918-3000
Fac.  (212) 918-3100
Email:  slade.metcalf@hoganlovells.com
Email:  kate.bolger@hoganlovells.com
Email:  rachel.strom@hoganlovells.com
Attorneys for *Plaintiff*
*HarperCollins Publishers L.L.C.*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 1

    A.    The Parties ................................................................................................. 1

    B.    America By Heart ....................................................................................... 2

    C.    Gawker's Infringing Publication Of The Book ......................................... 3

    D.    Defendant Refuses To Take Down The Unauthorized Publication ......... 4

    E.    The Complaint And Request For An Injunction ...................................... 4

ARGUMENT ............................................................................................................ 5

THIS COURT SHOULD PRELIMINARILY ENJOIN GAWKER FROM
CONTINUTING TO DISTRIBUTE THE BOOK .................................................. 5

    A.    The Standard For Issuing Preliminary Injunctive Relief .......................... 5

    B.    HarperCollins Is Likely To Succeed On The Merits ................................ 6

        1.    HarperCollins Can Establish All The Elements of A Copyright Claim ....... 6

        2.    Gawker's Use Is Not A Fair Use ............................................... 8

            a.    Gawker's Use of the Book is a Non-Transformative,
                Commercial Use ........................................................... 9

            b.    Gawker Excerpted the Creative Expression From An
                Unpublished Work ...................................................... 11

            c.    Gawker Used a Substantial Portion of the Book ............... 12

            d.    Gawker's Unauthorized Publication of the Book Will
                have a Significant Negative Impact on the Book's
                Potential Market .......................................................... 13

    C.    HarperCollins Is Likely To Suffer Irreparable Harm If An Injunction Is Not
           Issued And the Balance Of the Hardships Weigh In HarperCollins' Fair ............. 14

    D.    Public Interest Would Not Be Disserved By The Granting Of An Injunction ......... 17

CONCLUSION ....................................................................................................... 18

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Blanch v. Koons,*
   467 F.3d 244 (2d Cir. 2006) ...................................................................................9

*Campbell v. Acuff-Rose Music, Inc.,*
   510 U.S. 569 (1994) .............................................................................................9

*eBay, Inc. v. MercExchange,*
   547 U.S. 388 (2006) ...........................................................................................15

*Edgerton v. UPI Holdings, Inc.,*
   Civil Action No. CCB-09-1825, 2010 WL 2651304 (D. Md. 2010) ......................7

*Gund Inc. v. SKM Enters., Inc.,*
   No. 01 CIV 0882 (CSH), 2001 WL 125366 (S.D.N.Y. Feb. 14, 2001) ..................6

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
   471 U.S. 539 (1985) ....................................................................................*passim*

*Hofheinz v. Discovery Communications, Inc.,*
   No. 00 CIV. 3802(HB), 2001 WL 1111970 (S.D.N.Y Sept. 30, 2001) ................11

*Infinity Broad. Corp. v. Kirkwood,*
   150 F.3d 104 (2d Cir. 1998) ...................................................................................9

*Jorgensen v. Epic/Sony Records,*
   351 F.3d 46 (2d Cir. 2003) .....................................................................................7

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,*
   312 F.3d 94 (2d Cir. 2002) .....................................................................................5

*Nature's Enters., Inc. v. Pearson,*
   No. 08 Civ. 8549 (JGK), 2008 WL 4700547 (S.D.N.Y. Oct. 24, 2008) ................6

*New Era Publications Int'l v. Carol Publishing Group,*
   904 F.2d 152 (2d Cir.),
   *cert denied,* 498 U.S. 921 (1990)....................................................................8, 11

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
   602 F.3d 57 (2d Cir. 2010) .....................................................................................7

*Random House, Inc. v. Rosetta Books LLC,*
   283 F.3d 490 (2d Cir. 2002) ...................................................................................7

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010) ......................................................................................*passim*

*Sarl Louis Feraud Int' v. Viewfinder, Inc.*,
489 F. 3d 474 (2d Cir. 2007) ...................................................................................... 9

*Somoza v. New York City Dept. of Educ.*,
No. 06 Civ. 5025(VM), 2006 WL 1981758 (S.D.N.Y. July 10, 2006) ..................................... 6

*U.S. v. American Soc. of Composers, Authors and Pubs.*,
599 F. Supp. 2d 415 (S.D.N.Y. 2009) ............................................................................ 9, 10

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
877 F.2d 1120 (2d. Cir. 1989) ..................................................................................... 6


**FEDERAL RULES AND STATUTES**

17 U.S.C. 502(a) ...................................................................................................... 6

17 U.S.C. § 107 ....................................................................................................... 8, 9, 14

17 U.S.C. § 411 ....................................................................................................... 7

Rule 65 of the Federal Rules of Civil Procedure .................................................................. 1, 5, 6

Plaintiff HarperCollins Publishers L.L.C. ("HarperCollins" or "Plaintiff"), by its undersigned attorneys, respectfully submits this memorandum of law in support of its motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for a preliminary injunction and pursuant to Rule 65(b) of the Fed. R. Civ. P. for a temporary retraining order pending a hearing on that motion, enjoining defendant Gawker Media LLC ("Gawker") from distributing, publishing or otherwise transmitting pages from the book *America By Hear*t by Sarah Palin (the "Book") in violation of Plaintiff's exclusive rights under the Copyright Act.[1]

## PRELIMINARY STATEMENT

On November 17, 2010, a mere week before HarperCollins planned to release the Book, Gawker, without authorization, brazenly copied twenty-one pages from the Book and published those exact pages verbatim on its website. Gawker did not provide any substantive commentary on the Book or even provide context for the Book. Rather, Gawker stripped HarperCollins of its right to control when and how it published the Book – a right that was secured to HarperCollins by the Copyright Act and upheld by the United States Supreme Court in *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985). Gawker's use is clearly not a fair use – it is a stark, unlawful infringement and should be enjoined.

## BACKGROUND

### A.    The Parties

HarperCollins is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 10 East 53rd Street, New York, New York 10022. Metcalf Decl., Ex. A ¶ 2. HarperCollins is in the business of publishing and selling

---

[1] The facts necessary for a determination of this motion are set forth in the accompanying declarations of Christopher L. Goff, sworn to on the 19th day of November, 2010 (the "Goff Decl."), and of Slade R. Metcalf, sworn to on the 19th day of November, 2010 (the "Metcalf Decl.") and the exhibits annexed thereto.

\\\NY - 091919/000019 - 2296205 v2

books.  *Id.*  HarperCollins has the exclusive rights to publish, reproduce, and distribute the Book throughout the world, including the right to publish it electronically.  Goff Decl. ¶ 7.

Defendant Gawker is a limited liability company with a place of business at 210 Elizabeth Street, Fourth Floor, New York, New York 10012.  Metcalf Decl., Ex. A ¶ 3.  Gawker is in the business of publishing and distributing a weblog to the public at the URL www.gawker.com.  *Id.*  Gawker is a weblog that describes itself as "dish[ing] the nation's most current and cutting gossip across media, entertainment, technology, and business."  http://advertising.gawker.com/titles/gawker/  (last visited Nov. 19, 2010).

**B.**   ***America By Heart***

HarperCollins is scheduled to publish the Book on November 23, 2010.  Goff Decl. ¶ 6. The Book, written by the former Alaska Governor and former Republican Vice-Presidential candidate, is a personal reflection by Governor Palin on American history, culture, and current affairs.  *Id.*  In *America by Heart*, Governor Palin comments on the key values that have been part of her own life and that continue to inform her vision of America's future.  *Id.*, Ex. A. Governor Palin's thoughts in *America by Heart* have never before been published.  *Id.*

HarperCollins filed a preregistration application for *America by Heart* with the United States Copyright Office on November 19, 2010 and paid all fees associated with the registration. Goff Decl., Ex. B.   Preregistration with the United States Copyright Office has been completed for the Book under the number PRE 000004046.  Goff Decl., Ex. C.

Because of Palin's status as a well-known politician, author of the best-selling book *Going Rogue*, and political commentator, HarperCollins anticipates that the Book will be a national bestseller and, consequently, a commercial success for HarperCollins.  Goff Decl. ¶ 10. For this reason, HarperCollins has put extensive plans in place to promote the Book.   For

example, the Book is embargoed until November 23, 2010. *Id.* ¶ 11. That means that HarperCollins has released only limited review copies of the Book to the media in advance of the publication of the Book and, HarperCollins has done so based on agreements in writing that no member of the media that receives such an advance copy of the Book can publish a review of the book before November 23, 2010. *Id.* It also means that the Book is not available for sale to the general public until November 23, 2010. *Id.* Embargoing a Book adds to the excitement surrounding its publication and maximizes the impact it has on the purchasing public. Goff Decl. ¶ 12. It allows HarperCollins to control the media rollout surrounding the publication of the Book and, particularly, to control the distribution of the particularly newsworthy or interesting excerpts or portions of the Book. *Id.* It also allows HarperCollins and the Book's author to control the manner in which the story contained in the Book unfolds. *Id.* HarperCollins has planned an extensive publicity campaign for the Book, including radio, television and print interviews with Governor Palin. Goff Decl. ¶ 13.

C.   **Gawker's Infringing Publication Of The Book**

On or about November 17, 2010, Gawker published an item entitled "Sarah Palin's New Book: Leaked Excerpts" at the URL http://gawker.com/5692353/sarah-palins-new-book-leaked-excerpts (last visited Nov. 19, 2010) (the "Item"). The Item began:

> Well, look what popped up five days early: leaks from Sarah Palin's forthcoming memoir/manifesto, *America By Heart*, in which the reality TV matriarch rants against "talent deprived" reality TV stars, lauds daughter Bristol's chastity, and celebrates not aborting Trig.

> Our favorite Wasilla-obsessed blog Palingates was the first to post excerpts from *America By Heart*. The book is currently in distribution centers, awaiting its official release on Tuesday. We got our hands on some of the pages, too!

The Item then publishes with it twenty-one full and exact pages of the Book, which are easily viewable and readable by a casual web visitor. *See* http://gawker.com/5692353/sarah-palins-

new-book-leaked-excerpts (last visited Nov. 19, 2010).  In fact, placed next to the images, the pages, which are nothing more than photocopies, of the open pages of the Book, is a "Click to Enlarge" link that allows a viewer to enlarge the image such that it is easily legible.  Indeed, enlarged, the images are identical to the pages as they will appear in the published Book.  A true and correct copy of a print out of the Item is annexed to the Goff Decl. at Ex. D.

Gawker's publication of these pages was certainly unauthorized by HarperCollins.

**D.**     **Defendant Refuses To Take Down The Unauthorized Publication**

On November 17, 2010, Christopher L. Goff, the Senior Vice President and General Counsel of HarperCollins, wrote to Defendant demanding that Gawker remove the Book's contents from the Item and desist from making further unauthorized publication of the Book. Goff Decl. at Ex. E.  Gawker has not done so.

Instead, on November 18, 2010, Gawker posted another item boasting of its infringing activities.  The post entitled "Sarah Palin Is Mad At Us For Leaking Pages From Her Book" Is available at the URL  http://gawker.com/5693797/sarah-palin-is-mad-at-us-for-leaking-pages-from-her-book (last downloaded Nov. 19, 2010) and reads, in relevant part:

> Did you catch the excerpt we posted yesterday from Sarah Palin's new book? Sarah did. She tweets with rage: "The publishing world is LEAKING out-of-context excerpts of my book w/out my permission? Isn't that illegal?"
>
> [Sarah: If you're reading this—and if you are, welcome!—you may want to take a moment to familiarize yourself with the law. Try starting here or here. Or skip the totally boring reading and call one of your lawyers. They'll walk you through it.]

The November 18 item links to the Copyright Act and to the definition of "fair use" contained in Wikipedia, a user-generated Internet based "encyclopedia".

**E.**     **The Complaint And Request For An Injunction**

On November 19, 2010, HarperCollins filed a complaint (the "Complaint") against Gawker asserting a single cause of action for copyright infringement based on Gawker's

unauthorized publication of pages of the Book.   Metcalf Decl., Ex. A.   After filing the Complaint, counsel for HarperCollins contacted Gawker's Chief Operating Officer, Legal Director, and Director of Business Development at Gawker to inform her that HarperCollins had filed the Complaint.  Metcalf Decl. ¶¶ 3-4.  HarperCollins' counsel also notified Gawker that on November 20, 2010, HarperCollins would be seeking a temporary restraining order requiring Gawker to remove twenty-one pages of the Book from Gawker's website.  *Id.*  Counsel for HarperCollins also told Gawker that it would notify Gawker when an appearance before a U.S. District Judge was scheduled.  *Id.* ¶ 4.

## ARGUMENT

## THIS COURT SHOULD PRELIMINARILY ENJOIN GAWKER FROM CONTINUING TO DISTRIBUTE THE BOOK

Without an injunction, Gawker will continue to violate HarperCollins' copyright and usurp HarperCollins' right to control when and how the Book is published.  For this reason, this Court should enjoin Gawker from continuing to publish the Item.

### A.      The Standard For Issuing Preliminary Injunctive Relief

In the Second Circuit, a court may issue a preliminary injunction in a copyright action pursuant to Fed. R. Civ. P. 65(a) if the plaintiff demonstrates:  (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) "that he is likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in the plaintiff's favor;" and (4) the "public interest would not be disserved" by the issuance of a preliminary injunction.  *Salinger v. Colting*, 607 F.3d 68, 79-80  (2d Cir. 2010) (internal citation and quotations omitted).  *See also Merkos L'Inyonei Chinuch, Inc.* v. *Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96, 100 (2d Cir. 2002) (affirming preliminary injunction in

copyright action); *Nature's Enters., Inc. v. Pearson*, No. 08 Civ. 8549 (JGK), 2008 WL 4700547, at * 3 (S.D.N.Y. Oct. 24, 2008) (granting preliminary injunction in copyright action); *Gund Inc. v. SKM Enters., Inc.*, No. 01 CIV 0882 (CSH), 2001 WL 125366, at *1-2 (S.D.N.Y. Feb. 14, 2001) (noting prior grant of temporary restraining order and granting preliminary injunction).

Pursuant to Fed. R. Civ. P. 65(b), "[t]he purpose of a temporary restraining order is to preserve an existing situation in *status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d. Cir. 1989) (internal citation and quotation omitted). A temporary restraining order may be granted pending a hearing on the preliminary injunction if the movant faces immediate and irreparable injury or damage. *Somoza v. New York City Dept. of Educ.*, No. 06 Civ. 5025(VM), 2006 WL 1981758, *7 (S.D.N.Y. July 10, 2006).

Further, pursuant to the Copyright Act itself, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. 502(a). Under this standard, HarperCollins' application should be granted.

## B.     HarperCollins Is Likely To Succeed On The Merits

Gawker's straightforward and unrepentant copying of the unpublished Book, without any expressive purpose, is not a protected fair use. Rather, it is plain and simple copyright infringement. For that reason, HarperCollins is very likely to succeed on the merits of its copyright claim.

### 1.     HarperCollins Can Establish All The Elements of A Copyright Claim

To prevail on a copyright claim, "a plaintiff with a valid copyright must demonstrate that:

(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation omitted).  Here, there is no doubt that HarperCollins will be able to establish these elements.

First, HarperCollins has a valid pre-registration in the Book, which, pursuant to §17 U.S.C. § 411, is sufficient for the institution of a copyright action.. *See* Complaint Ex. A. *See also Edgerton v. UPI Holdings, Inc.*, Civil Action No. CCB-09-1825, 2010 WL 2651304, at *5 n.7 (D. Md. 2010) ("Section 411(a) also permits infringement suits upon the preregistration of a copyright claim").  In addition, HarperCollins owns the exclusive rights to publish, reproduce and distribute the Book in all languages throughout the world, including the right to publish it electronically. [2]

Further, there is no doubt that Gawker "actually copied" the Book.  To show actual copying, a plaintiff may either bring forward direct evidence of copying or show that the defendant had access to plaintiff's work and "that there are similarities between the two works that are probative of copying." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (internal quotations omitted).  In the alternative, "where the works in question are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Id.* at 56 (internal quotations omitted).   Here, Gawker itself *admits,* even boasts, that it actually copied the Book.  Specifically, on its website, Gawker proudly proclaims that it is publishing "leaked excerpts" of the Book, going on to explain that "[t]he book is currently in distribution centers, awaiting its official release on Tuesday.  We got our hands on

---

[2] As the Second Circuit noted "an exclusive licensee can, as here, sue for copyright infringement." *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002).  Because HarperCollins is the exclusive licensee of the Book, it is entitled to bring this copyright action to protect its rights in the Book.

some of the pages, too!"  Goff. Decl., Ex. D.  And, in the November 18 item, Gawker suggests that its defense to a charge of copyright infringement is not that it did not copy the Book, but rather that its doing so constituted fair use.  Thus, Gawker, by its own concession, actually copied the Book.

Finally, here, Gawker's copying of the Book is illegal because Gawker's Item is not merely substantially similar to the Book – Gawker published an exact reproduction of 21 pages from the Book and made sure to do so in a form that would be legible to the casual web browser by encouraging the viewer to "Click to Enlarge."  For these reasons, Gawker has unquestionably infringed the copyright in the Book.  As a result, HarperCollins can, undoubtedly, succeed on the merits of its claim.

2.  Gawker's Use Is Not A Fair Use

Moreover, Gawker's verbatim copying of the unpublished Book cannot, despite Gawker's protestations to the contrary, qualify as a fair use.  Section 107 of the Copyright Act codifies the defense of fair use.  Under the statute, one may reproduce limited portions of copyrighted works to the extent necessary "for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research" without risk of civil penalties.  Whether a use of particular copyrighted materials is considered "fair" is a mixed question of fact and law that may be resolved by the Court in the first instance as a matter of law.  *New Era Publications Int'l v. Carol Publishing Group*, 904 F.2d 152, 155 (2d Cir.), *cert denied*, 498 U.S. 921 (1990) (*quoting Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 549 (1985).  The factors that must be considered in determining whether the use of a work is a fair use are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; *see also Sarl Louis Feraud Int' v. Viewfinder, Inc.*, 489 F. 3d 474, 482 (2d Cir. 2007). "Since fair use is an affirmative defense to a claim of infringement, the burden of proof is on its proponent." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998). As discussed in greater detail below, Gawker will not be able to carry its burden of demonstrating that any of the four factors weigh in favor of a finding of fair use.

    a.   <u>Gawker's Use of the Book is a Non-Transformative, Commercial Use</u>

The first fair use factor, the purpose and character of the use, clearly weighs against a finding of fair use because Gawker's use of the Book is a non-transformative commercial use. As a preliminary matter, there is no question that Gawker's use of the Book is not transformative. The United States Supreme Court has held that, in assessing the first fair use factor, a court must look to "whether the new work merely supersedes the objects of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 570, 579 (1994). As a result, the Second Circuit has "declined to find a transformative use when the defendant has done no more than find a new way to exploit the creative virtues of the original work." *Blanch v. Koons*, 467 F.3d 244, 251-252 (2d Cir. 2006). *See also U.S. v. American Soc. of Composers, Authors and Pubs.*, 599 F. Supp. 2d 415, 424 (S.D.N.Y. 2009) ("Applicant's use of previews is not transformative. It is undisputed that the music segments used in applicant's previews are exact copies of ASCAP music.") Here, Gawker's unauthorized publication of the Book is in no way transformative of the Book. Instead, Gawker just republished exact images of the actual pages from the Book. Goff Decl., Ex. D. It is true that

Gawker added some minimal introductory language between pages of the Book, but this language in no way changes the meaning or message of the Book. Gawker is merely trading off the "leaked" pages of the Book to draw traffic to its website.

The United States Supreme Court's decision in *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) is particularly instructive on this point. In that case, *The Nation* magazine published unauthorized excerpts of President Gerald Ford's memoirs two to three weeks before *Time* Magazine, the holder of the exclusive right to print prepublication excerpts from the memoirs, published its article. The Supreme Court, in deciding that the first factor weighed against finding that *The Nation*'s unauthorized publication of the excerpts was a fair use, determined that "*The Nation* went beyond simply reporting uncopyrightable information and actively sought to exploit the headline value of its infringement." *Harper & Row*, 471 U.S. at 561 (internal marks and citations omitted). The Supreme Court further noted that "[f]air use presupposes good faith and fair dealing," and observed that "*The Nation* knowingly exploited a purloined manuscript…[u]nlike the typical claim of fair use, *The Nation* cannot offer up even the fiction of consent as justification." *Id.* at 562 (internal marks and citations omitted). Gawker's has similarly exploited a purloined or "leaked" copy of the Book with without any fiction of consent.

Further, as this Court has held, the use of a copyrighted work to attract viewers to a website containing advertisements for which the secondary user is compensated amounts to a commercial use that weighs against a finding of fair use. *U.S. v. Am. Soc'y of Composers, Authors and Publishers*, 599 F. Supp. 2d 415, 429 (S.D.N.Y. 2009). Here, Gawker's use of the Book is clearly commercial, as the Item as posted contains third-party advertising. Goff Decl. at ¶ 15. The first factor, therefore, weighs against a finding of fair use.

b.   Gawker Excerpted the Creative Expression From An Unpublished Work

The second fair use factor, the nature of the copyrighted work, also weighs against a finding of fair use because Gawker knowingly copied an *unpublished* creative work.   In assessing the nature of the copyrighted work, courts look to whether the infringed work was published or unpublished and whether the work was creative or factual.   "As a general rule, published works enjoy less fair use protection than unpublished works, and creative works are entitled to greater protection that factual works."   *Hofheinz v. Discovery Communications, Inc.*, No. 00 CIV. 3802(HB), 2001 WL 1111970, at *5 (S.D.N.Y Sept. 30, 2001).   *See also New Era Publications,* 904 F.2d at 157 ("Furthermore, the scope of fair use is greater with respect to factual than non-factual works.)   As the Supreme Court held in *Harper & Row*, "[w]hile even substantial quotations might qualify as fair use in a review of a published work…the author's right to control the first public appearance of his expression weighs against such use of the work before its release.   The right of first publication encompasses not only the choice whether to publish at all, but also the choices of when, where, and in what form first to publish a work."   *Harper & Row*, 471 U.S. at 564.   Thus, the Supreme Court held that applying the second factor to *The Nation*'s excerpts weighed against a finding of fair use because the copyright holders had a clear interest in keeping the manuscript confidential, and *The Nation*'s use "afforded no such opportunity for creative or quality control."   *Id.*   The Supreme Court therefore concluded that "[a] use that so clearly infringes the copyright holder's interests in confidentiality and creative control is difficult to characterize as 'fair.'"   *Id.*

Gawker's use of the excerpts from the unpublished Book is indistinguishable from *The Nation*'s use of President Ford's unpublished memoirs at issue in *Harper & Row*.   Indeed, the same analysis that guided the United States Supreme Court in *Harper & Row* is instructive here.   For example, the Supreme Court noted that while "some of the briefer quotes from the memoirs"

11

were "arguably necessary to convey the facts," application of the second factor to *The Nation*'s excerpts weighed against a finding of fair use because *The Nation* had excerpted the "subjective descriptions and portraits of public figures whose power lies in the author's individualized expression" *Harper & Row*, 471 U.S. at 563.   Similarly here, the Book is unpublished and has been embargoed, but Gawker has usurped HarperCollins' ability to control the manner in which Governor Palin's message is distributed.   For example, Gawker published some (but not all) of the portions of the Book that relate to the birth of Governor Palin's youngest child, Trig, and to Governor Palin's discovery, while still pregnant with Trig, that he had Downs Syndrome.   Goff Decl. at ¶ 19.   Governor Palin's highly personal reflections clearly amount to the descriptions "whose power lies in the author's individualized expression," but Gawker has usurped HarperCollins' lawful right to publish them by distributing them to the American public without authority. For this reason, the second factor weighs heavily against a finding a fair use.

c.   <u>Gawker Used a Substantial Portion of the Book</u>

Next, the third factor, the amount and substantiality of the portion used, also weighs against a finding of fair use because Gawker used a substantial portion of the Book.   As the Supreme Court held in *Harper & Row*, which involved the taking of a mere 300 words from a full length book, "the fact that a substantial portion of the infringing work was copied verbatim [from the original work] is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Harper & Row*, 471 U.S. at 565.   Thus, even though "[i]n absolute terms, the words actually quoted were an insubstantial portion" of President Ford's memoirs, *The Nation* had included several verbatim excerpts of the memoirs in its article and the Supreme Court therefore determined that the third factor weighed against a finding of fair use. *Id.* at 564-566.

Here, there can be no doubt that the Item includes verbatim excerpts from the Book. Indeed, the Item contains very little else besides actual copies of 21 pages from the Book. Goff Decl. at ¶14, Ex. D. This amounts to approximately 5,00 words, which is approximately 17 times the number of words that the Supreme Court found to be infringing in *Harper & Row*. Gawker has therefore used a substantial portion of the Book, and the third factor therefore weighs against a finding of fair use.

> d. <u>Gawker's Unauthorized Publication of the Book Will have a Significant Negative Impact on the Book's Potential Market</u>

Finally, the fourth factor, the effect on the potential market for or value of the copyrighted work, weighs against a finding of fair use because Gawker's unauthorized publication of the Book will have a significant negative impact on the Book's potential market. In concluding that the fourth factor weighed against a finding of fair use, the Supreme Court in *Harper & Row* held that the "borrowing of these verbatim quotes from the unpublished manuscript … directly competed for a share of the market for prepublication excerpts." *Id.* The Supreme Court further held that protecting *The Nation*'s actions under the fair use doctrine could seriously harm the market for copyrighted works:

> [A] fair use doctrine that permits extensive prepublication quotations from an unreleased manuscript without the copyright owner's consent poses substantial potential for damage to the marketability of first serialization rights in general. Isolated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented.

*Id.* at 569 (internal marks and citations omitted).

Once again, the situation in *Harper & Row* is indistinguishable from the one in this case. Gawker has taken extensive prepublication quotations from an unreleased work without the copyright owner's consent. And as the Supreme Court recognized, this will inevitably have an effect on the potential market for the Book. In this case, Gawker, by taking verbatim excerpts

from the Book and posting them on its website for anyone in the world to view, free of charge, has given the book-buying public a free look at the contents of the Book, days before publication. A buyer whose curiosity is satisfied by viewing the Item can decide that he or she need not buy the Book as a result of Gawker's publication.  Moreover, Gawker has prevented HarperCollins from effectively executing its marketing plan for the Book.   And, Gawker's unauthorized publication of the Book will potentially continue to cause book buyers to choose not to buy the Book in favor of reading the portions published on Gawker.  Goff Decl. at ¶¶ 20-22.  The fourth factor, therefore, weighs heavily against a finding of fair use.

In sum, all four factors of the fair use analysis set forth in 17 U.S.C. § 107 weigh against a finding of fair use here.  For this reason, HarperCollins is likely to succeed in its copyright infringement action.

**C.**   **HarperCollins Is Likely To Suffer Irreparable Harm If An Injunction Is Not Issued And the Balance Of the Hardships Weigh In HarperCollins' Fair**

Next, HarperCollins is likely to suffer irreparable harm in the absence of an injunction and the balance of the hardships weighs, decidedly, in HarperCollins favor.  As the Second Circuit recently clarified, these two elements – irreparable injury and a balancing of the hardships – are very much "related." *Salinger,* 607 F.3d at 81.  As the Court explained, "[t]he relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Id.*  To that end, "[t]he plaintiff's interest is, principally, a property interest in the copyrighted material." *Id.* Further, "the Supreme Court has suggested, a copyright holder might also have a First Amendment interest in not speaking." *Id.* (citing *Harper & Row Publishers, Inc.*, 471 U.S. at 559).  On the other hand, the Second Circuit held that the countervailing factors that favor a defendant include a situation where the defendant "has a property interest in [the defendant's]

work to the extent that work does not infringe the plaintiff's copyright. And a defendant also has a core First Amendment interest in the freedom to express him or herself, so long as that expression does not infringe the plaintiff's copyright." *Id.*

Here, HarperCollins will face irreparable injury if an injunction is not issued and the balance of equities tips in HarperCollins' favor. As the Second Circuit explained in *Salinger*:

> [h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. . . . And courts have tended to issue injunctions in this [copyright] context because to prove the loss of sales due to infringement is notoriously difficult.

*Salinger*, 607 F.3d at 81(internal citations and quotations omitted). Although the Second Circuit made clear in *Salinger* that irreparable injury cannot be presumed in a copyright action merely based on the movant's likelihood of prevailing on the merits, that "is not to say that most copyright plaintiffs who have shown a likelihood of success on the merits would not be irreparably harmed absent preliminary injunctive relief. As an empirical matter, that may well be the case, and the historical tendency to issue preliminary injunctions readily in copyright cases may reflect just that." *Id.* at 82 (internal citations and quotations omitted). Indeed, the *Salinger* Court noted "[t]his 'long tradition of equity practice' is not surprising, given the difficulty of protecting a right to exclude through monetary remedies." *Id.* (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 395 (2006)). Importantly, in assessing the irreparable harm to the plaintiff, the court should remember that "the loss of First Amendment freedoms, and hence infringement of the right not to speak, for even minimal periods of time, unquestionably constitutes irreparable injury." *Salinger*, 607 F.3d at 81 (citation omitted).

Here, the precise elements articulated in *Salinger* and in *Harper & Row* dictate a finding that HarperCollins will likely be irreparably harmed in the absence of an injunction.

Specifically, HarperCollins' right to "not speak" and control the marketing and roll-out for the Book is irreparably damaged every moment that the Book is available on Gawker.  Indeed, here, as in *Harper & Row,* Gawker has effectively "arrogated to itself the right of first publication, an important marketable subsidiary right." *Harper & Row,* 471 U.S. at 549.  "From the beginning, those entrusted with the task of revision [of the Copyright Act] recognized the overbalancing reasons to preserve the common law protection of undisseminated works until the author or his successor chooses to disclose them."  *Id.* at 553 (internal citation and quotation omitted). Accordingly, in publishing portions of the Book before HarperCollins was able to do so, Gawker broke the embargo and unlawfully usurped the benefits of first publication that lawfully belong to HarperCollins.  This irreparably damages HarperCollins' ability to control the manner in which Governor Palin's message is distributed.   Further, as the Second Circuit warned in *Salinger*, these harms cannot be compensated in monetary damages.

In addition to the first publication right, Gawker's unauthorized publication of the Book harms HarperCollins in other ways and will continue to do so even after the Book's publication date has passed.  On the most basic level, it damages the marketability of the Book because it provides the book-buying public with a free copy of several important passages in the Book prior to the general availability of the Book on November 23.  This undercuts the public's incentive to buy the Book.  Second, Gawker has preemptively decided what passages from the book to focus on, prior to the Book's availability to the public.  As such, they have usurped HarperCollins' right to tell the Book's story as it chooses.

Further, there is no countervailing interest of the Gawker that tips the balance of the equities in its favor.  In this factual scenario, where Gawker has knowingly published "leaked" pages from a Book and provided minimal, if any, original content, its rights to free expression

are greatly diminished.  This is not a case where Gawker invested substantial time and resources in creating a new work – this is simply a cut and paste job.  As such, HarperCollins will be irreparably harmed by the continued publication by Gawker of the Book and the balance of equities tips decidedly in HarperCollins' favor.

**D.      Public Interest Would Not Be Disserved By The Granting Of An Injunction**

Finally, the public interest would not be disserved if this Court grants a preliminary injunction here.  In considering this final factor, the *Salinger* court remarked that "The object of copyright law is to promote the store of knowledge available to the public. But to the extent it accomplishes this end by providing individuals a financial incentive to contribute to the store of knowledge, the public's interest may well be already accounted for by the plaintiff's interest." *Salinger*, 607 F.3d at 82.  The Court noted that "[e]very injunction issued before a final adjudication on the merits risks enjoining speech protected by the First Amendment.  Some uses, however, will so patently infringe another's copyright, without giving rise to an even colorable fair use defense, that the likely First Amendment value in the use is virtually nonexistent." *Id.* at 82-83.

Here, Gawker's unauthorized use of the Item is so lacking in any legitimate fair use defense while, on its face, so blatantly infringes HarperCollins' exclusive rights in the Book, the public will in no way be disserved by this Court's enjoining Gawker's Item.  Importantly, HarperCollins is not seeking – and would not seek – to prevent substantive commentary or criticism of the Book.  That right will always be protected by the First Amendment to the United States Constitution. HarperCollins is simply protecting its right of first publication, and its other rights as an exclusive copyright licensee, rights expressly protected by the U.S. Supreme Court in *Harper & Row* and other cases.  In sum, Gawker's willful and self-satisfied copying of 21-

pages from the Book is not protected as fair use and the public has no interest in allowing unlawful infringement to continue unabated.

## CONCLUSION

For all of the foregoing reasons, plaintiff HarperCollins Publishers L.L.C. respectfully requests that this Court grant both its application for a temporary restraining order and then its motion for a preliminary injunction, and also grant such other and further relief, together with costs (including attorneys' fees), as this Court deems appropriate.

Dated: November 20, 2010

Respectfully submitted,

HOGAN LOVELLS US LLP

By: _____

Slade R. Metcalf
Katherine M. Bolger
Rachel F. Strom
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Tel.  (212) 918-3000
Fac.  (212) 918-3100
*Attorneys for Plaintiff HarperCollins Publishers L.L.C.*